UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHIRLEY TAPPER,<br>    Plaintiff,<br><br>v.<br><br>JETRO HOLDINGS, LLC, ET AL.<br>    Defendants. | No. 3:16-cv-01446 (MPS) |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

**I.  Introduction**

Plaintiff Shirley Tapper brings suit against defendants Jetro Holdings, LLC, RD America, LLC, and Restaurant Depot, LLC (collectively "Restaurant Depot") for unlawfully terminating her employment in violation of Title VII of the Civil Rights Act of 1964, §§ 2000e *et seq.* ("Title VII").  She brings claims against the defendants under Title VII for: (i) race discrimination (Count One); (ii) hostile work environment based upon sexual harassment (Count Two); and (iii) retaliation (Count Three).  Now before me is the defendants' motion for summary judgment. (ECF No. 32.)  For the following reasons, the motion is denied.

**II.  Background**

    **A.  Factual Background**

The following facts, which are taken from the parties' Local Rule 56(a) Statements and the exhibits, are undisputed unless otherwise indicated.  "Plaintiff Shirley Tapper . . . was hired by [Restaurant Depot] in August 2013 as a cashier."  (ECF No. 33, Defendants' Local Rule 56(a)1 Statement ("Def.'s L.R. 56(a)1 Stmt.") at ¶ 1; ECF No. 36, Plaintiff's Local Rule 56(a)2 Statement ("Pl.'s L.R. 56(a)2 Stmt.") at ¶ 1.)  After her hiring, she received a series of

1

Disciplinary Actions. "On August 25, 2013, Tapper received a Disciplinary Action for a $10 cash shortage." (Def.'s L.R. 56(a)1 Stmt. at ¶ 2; Pl.'s L.R. 56(a)2 Stmt. at ¶ 2.) "On September 29, 2013, Tapper received a Disciplinary Action for an $89.95 cash shortage." (Def.'s L.R. 56(a)1 Stmt. at ¶ 3; Pl.'s L.R. 56(a)2 Stmt. at ¶ 3.) "On November 2, 2013, Tapper received a Disciplinary Action for not scanning all of the items in customer carts. [She] denies memory of this incident and alleges that the signature on the Disciplinary Action Form was not her signature." (Def.'s L.R. 56(a)1 Stmt. at ¶ 4; Pl.'s L.R. 56(a)2 Stmt. at ¶ 4.) "On January 15, 2014, Tapper received a written warning for $10.15 cash shortage." (Def.'s L.R. 56(a)1 Stmt. at ¶ 5; Pl.'s L.R. 56(a)2 Stmt. at ¶ 5.)

Ms. Tapper continued to receive Disciplinary Actions throughout the first half of 2014. "A Disciplinary Action Form dated February 1, 2014 reflects that Tapper was suspended for a $201.50 cash shortage. Tapper claims that she has no memory of the incident and that she was never suspended while working at Restaurant Depot." (Def.'s L.R. 56(a)1 Stmt. at ¶ 6; Pl.'s L.R. 56(a)2 Stmt. at ¶ 6.) "A Disciplinary Action Form dated February 19, 2014 reflects that Tapper was suspended for a $95.15 cash shortage"; Ms. Tapper once again "claims that she has no memory of the incident and that she was never suspended while working at Restaurant Depot." (Def.'s L.R. 56(a)1 Stmt. at ¶ 7; Pl.'s L.R. 56(a)2 Stmt. at ¶ 7.) "On April 15, 2014, Tapper received a final warning for a $19.03 cash shortage." (Def.'s L.R. 56(a)1 Stmt. at ¶ 8; Pl.'s L.R. 56(a)2 Stmt. at ¶ 8.)

Restaurant Depot terminated Ms. Tapper's employment on June 19, 2014, "after a $100.11 cash overage was discovered in her cash drawer." (Def.'s L.R. 56(a)1 Stmt. at ¶ 9; Pl.'s L.R. 56(a)2 Stmt. at ¶ 9.) While Restaurant Depot claims that Ms. Tapper was "terminated for the disparities in her cash drawer pursuant to Restaurant Depot's Employee Performance Error

Standard," Ms. Tapper denies this claim. (Def.'s L.R. 56(a)1 Stmt. at ¶ 10; Pl.'s L.R. 56(a)2 Stmt. at ¶ 10.) "Tapper alleges that another Caucasian or Hispanic employee, Sandy Gauman, was allowed to pay the cash register back after a $500 cash shortage." (Def.'s L.R. 56(a)1 Stmt. at ¶ 12; Pl.'s L.R. 56(a)2 Stmt. at ¶ 12.) Ms. Tapper also "claims that she was told that she smiled too much." (Def.'s L.R. 56(a)1 Stmt. at ¶ 14; Pl.'s L.R. 56(a)2 Stmt. at ¶ 14.)

### B. Ms. Tapper's Complaint

Ms. Tapper subsequently filed suit against Restaurant Depot under Title VII. (*See* ECF No. 22 ("Complaint").) Ms. Tapper contends that Restaurant Depot management created a hostile work environment by routinely commenting upon her appearance, accusing her of having intimate relationships with other Restaurant Depot employees, complaining that she "smiles too much" and flirted with customers, and "[p]ulling her into the office several times to request she fill[] out" paperwork indicating she was having a relationship with a coworker. (*Id.* at 3.) She brings a claim of a sex-based hostile work environment in violation of Title VII based upon these allegations. (*Id.* at 9.) Ms. Tapper also alleges that a Restaurant Depot manager would routinely violated company policy "by opening and counting the proceeds [of cash registers] outside the presence of [Ms. Tapper] and other African American cashiers." (*Id.* at 5.) Ms. Tapper further charges that Restaurant Depot's policy providing for the automatic dismissal of employees with "shortages of $500 or more" was not enforced against "Caucasian and Hispanic cashiers." (*Id.* at 6.) As such, she alleges a claim of race discrimination in violation of Title VII against Restaurant Depot in connection with her termination. (*Id.* at 8.) Finally, she also brings a claim for retaliation in violation of Title VII on the basis that Restaurant Depot terminated her employment after she complained she was being subjected to sexual harassment. (*Id.* at 9.)

### III. Legal Standard

Summary judgment is appropriate only when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In making that determination, a court must view the evidence in the light most favorable to the opposing party." *Tolan v. Cotton,* 134 S.Ct. 1861, 1866 (2014) (internal quotation marks omitted). "A fact is material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted). The moving party bears the burden "of showing that no genuine factual dispute exists . . . , and in assessing the record to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences" in favor of the non-moving party. *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995).

IV.     **Discussion**

   A.     **Race Discrimination**

Title VII discrimination claims are governed by "the now-familiar three-part framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)." *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014). "Under *McDonnell Douglas* a plaintiff bears the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination; it is then the defendant's burden to proffer a legitimate non-discriminatory reason for its actions; the final and ultimate burden is on the plaintiff to establish that the defendant's reason is in fact pretext for unlawful discrimination." *Id.* (citing *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 446 (2d Cir. 1999)). Restaurant Depot argues that Ms. Tapper cannot establish a prima facie case and that, even if she could, it has presented a legitimate non-pretextual basis for terminating her employment. (ECF No. 34 at 6-9.)

4

### 1. Prima Facie Case

To set out a prima facie case of discrimination under Title VII, a plaintiff must establish: "(1) that [she] belonged to a protected class; (2) that [she] was qualified for the position [she] held; (3) that [she] suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008). This burden "is not onerous." *Id.* (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Restaurant Depot contends that Ms. Tapper cannot meet the fourth prong of this standard. (ECF No. 34 at 7.) I disagree.

The Second Circuit has stated that "[c]ircumstances contributing to a permissible inference of discriminatory intent may include," amongst other things, an employer's "invidious comments about others in the employee's protected group," "the more favorable treatment of employees not in the protected group," or "the sequence of events leading to the plaintiff's discharge." *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) (internal citations omitted). Ms. Tapper has presented evidence of all three of these circumstances in this case. As an initial matter, Ms. Tapper has presented three affidavits—one from her and two from her former coworkers—attesting that Restaurant Depot management used racial epithets in referring to other African American employees. (*See* ECF No. 36-7, Pl.'s Ex. G, Affidavit of Tyronda James ("James Aff.") at ¶¶ 16-17 (noting that a Restaurant Depot manager had made various derogatory statements about African American employees and referred to them using racial epithets); ECF No. 36-8, Pl.'s Ex. H, Affidavit of Shirley Tapper ("Tapper Aff.") at ¶ 22 (stating that the same Restaurant Depot manager often used racial epithets "around [Ms. Tapper] in reference to employees"); ECF No. 36-9, Pl.'s Ex. I, Affidavit of Todd Reynolds ("Reynolds

5

Aff.") at ¶ 34 (noting that the same Restaurant Depot manager often used racial epithets to refer to employees).)

Second, there is evidence in the record that African American employees at Restaurant Depot were treated worse than other employees. (*See* James Aff. at ¶¶ 20-21 ("Approximately 15 or more African Americans were fired while I worked there by Monica for the same violations that white cashiers committed and were never fired. Sandy and Cynthia were both allowed to pay back shortages when their register was short . . . ."), 23 ("White cashiers were allowed to pay back money when their cash tills were short [while] African American[s] were fired when their cash tills were short."); Tapper Aff. at ¶ 15 ("Only African Americans were fired when I was [at Restaurant Depot] that I can recall. Whites and Hispanics were not fired and were allowed to do things that I was not."); Reynolds Aff. at ¶¶ 10-12 ("It was a ritual because it was a daily thing where someone was always short, and it was the African Americans who were always fired for it. It was like a revolving door for blacks. There was a Hispanic girl named Sandy, who told me that she was short more than the average $500 or more, and she was allowed to pay the money back from her next check."), ¶¶19-20 ("No white or Hispanic employees were harassed the way [Tapper] and [James] were harassed. White and Hispanic people were protected by [Restaurant Depot management] and their family members who worked there.")[1] Third, Ms. Tapper has presented evidence that the sequence of events prior to

---

[1] In its reply brief, Restaurant Depot attacks the validity of the affidavits submitted by Ms. Tapper, contending that they are conclusory and unsubstantiated. (*See* ECF No. 42 at 3-7.) In adjudicating a motion for summary judgment, a court "may not make credibility determinations or weigh the evidence . . . . Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (internal quotation marks and emphases omitted). To be sure, affidavits based upon mere "naked speculation concerning the motivation for a defendant's adverse employment decision" are properly disregarded under Federal Rule of Evidence 701(b). *See Timbie v. Eli Lilly & Co.*, 429 F. App'x 20, 23 (2d Cir. 2011) (concluding

her termination also supports an inference of discrimination. In her affidavit, Ms. Tapper attested that Restaurant Depot management was "skimming . . . money from . . . African American cashiers' cash drawers and then firing them," and that management filed false Disciplinary Actions against her before her termination. (*See id.* at ¶¶ 3-11.) These strands of evidence provide more than enough to allow Ms. Tapper to make the "*de minim[i]s*" showing required to establish a prima facie case. *See Chambers*, 43 F.3d at 37 ("The burden of proof that must be met to permit an employment-discrimination plaintiff to survive a summary judgment motion at the prima facie stage is *de minim[i]s*." (internal quotation marks omitted)).

I therefore conclude that Ms. Tapper had made out a prima facie case of discrimination.

**2.** **Legitimate Non-Discriminatory Reason and Pretext**

Restaurant Depot advances a legitimate non-discriminatory reason for its termination of Ms. Tapper's employment: the seven Disciplinary Actions that Ms. Tapper received before her termination. (*See* ECF No. 34 at 8.) The burden thus shifts back to Ms. Tapper to demonstrate that this reason was pretextual. *See Abrams*, 764 F.3d at 251. To meet this burden, the "plaintiff may attempt to establish that [she] was the victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of credence." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 143 (2000) (internal quotation marks omitted).

Ms. Tapper has presented evidence that creates a genuine issue of material fact concerning the credibility of Restaurant Depot's proffered explanation for her termination. As an initial matter, she questions the veracity of four of the Disciplinary Actions. (*See* Tapper Aff.

---

district court properly disregarded affidavit that violated Federal Rule of Evidence 701(b) in adjudicating motion for summary judgment). While certain portions of the affidavits cited may toe close to this line, the portions cited within this ruling are specific enough to clear this low bar.

7

at ¶¶ 3 ("The November 13, 2013 Disciplinary Action [ECF No. 34-3, Ex. 3] is not my signature and I have never seen the document before the deposition on July 12, 2017. To my knowledge, the entire document was fabricated for this law suit."), 4 ("I was never suspended when I was employed by Restaurant Depot and that is not my signature on [ECF No. 34-6, Ex. 6]."), 8 ("I have never seen [ECF No. 34-7, Ex. 7] before, that is not my signature, I was never suspended, and this exhibit was fabricated for this law suit."), 9 ("I never received a final notice in [ECF No. 34-8, Ex. 8] and although it looks like my signature, I am sure that it is not because I was never given any final notice by [Restaurant Depot manager] Timothy Coleman.").) I conclude that there is a genuine dispute of material fact concerning whether Ms. Tapper actually signed these disciplinary reports. *See Lombardo v. United Techs. Corp.*, No. 3:95CV02353(WWE), 1997 WL 289669, at *2 (D. Conn. May 7, 1997) (concluding genuine dispute of material fact as to whether plaintiff's signature was forged); *Cavendish Traders, Ltd. v. Nice Skate Shoes, Ltd.*, 117 F. Supp. 2d 394, 402 (S.D.N.Y. 2000) (holding genuine dispute of material fact existed as to validity of signature where one party alleged document was forged and other denied it). If Restaurant Depot forged Ms. Tapper's signature on the Disciplinary Actions in question and never showed them to her—as she states in her affidavit—, that would be enough to show that her termination on that basis was pretextual. *See Holcomb*, 521 F.3d at 141 ("[I]n many cases, a showing or pretext, when combined with a prima facie case of discrimination, will be enough to permit a rational finder of fact to decide that the decision was motivated by an improper motive." (citing *Reeves*, 530 U.S. at 154 (Ginsburg, J., concurring) ("[E]vidence suggesting that a defendant accused of illegal discrimination has chosen to give a false explanation for its actions gives rise to a rational inference that the defendant could be masking its actual, illegal motivation.")).

The evidence presented above suggesting that Restaurant Depot management regularly used racist epithets, denigrated African American employees, and terminated them for violations that did not result in termination for non-African American employees also creates a genuine dispute of material fact regarding whether Restaurant Depot's reasoning was pretextual. *See Reeves*, 530 U.S. at 143 ("[A]lthough the presumption of discrimination drops out of the picture once the defendant meets its burden of production, the trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual." (internal quotations and citations omitted)). Drawing all inferences in Ms. Tapper's favor, a reasonable jury could find that Restaurant Depot's management harbored racial animus toward African Americans generally, and that this motivated its termination of Ms. Tapper's employment. *See Holcomb*, 521 F.3d at 142 (noting that plaintiff "need[] only . . . prove that the [allegedly pretextual decision] was partly . . . motivated [by racial animus] to prevail on the ultimate merits of his claim.").

For these reasons, Restaurant Depot's motion for summary judgment with respect to Ms. Tapper's racial discrimination claim is denied.

### B. Hostile Work Environment

To "establish a hostile work environment claim under Title VII, a plaintiff must produce enough evidence to show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010) (quoting *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006)). As such, "[a] plaintiff must show not only that she subjectively perceived the

9

environment to be abusive, but also that the environment was objectively hostile and abusive." *Id.* "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002). "Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Id.* Thus, "to analyze a hostile work environment claim, [courts] are required to look to the record as a whole and assess the totality of the circumstances, considering a variety of factors including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Gorzynski*, 596 F.3d at 102 (internal citations and quotation marks omitted).

Ms. Tapper has presented evidence of the following incidents of sexual harassment: (1) that she was repeatedly told her "pants were too tight and that she was smiling too much at the customers" (James Aff. at ¶ 19 (noting that she was repeatedly instructed by Restaurant Depot management to "tell [Ms. Tapper] that her pants were too tight and that she was smiling too much at the customers"); Tapper Aff. at ¶ 19 ("I was repeatedly told that my clothes were too tight."); (2) that other employees at Restaurant Depot, including management, spread rumors about her sexuality and implied that she was having affairs with coworkers (Tapper Aff. at ¶¶ 20 ("Multiple employees and non-employees were asking me who I was sleeping with because of rumors spread by [two Restaurant Depot managers]."), 21 (noting she was accused of wanting to leave early so she could spend her birthday with coworker); James Aff. at ¶¶ 18 ("[A Restaurant Depot Manager] told me that [another employee] and [Ms. Tapper] were having an affair and she told me to investigate it. I conducted an investigation and found that it was not true. [The employee] and [Ms. Tapper] never exhibited any behavior that would even warrant an

10

investigation. [The Restaurant Depot manager] conspired to get [Ms. Tapper] fired."), 14 (averring that a Restaurant Depot manager implied that Ms. Tapper was leaving work early on her birthday to spend the day with another Restaurant Depot employee), 9 (noting that two Restaurant Depot managers spread rumors that Ms. Tapper was having affairs with two other Restaurant Depot employees), 6 ("[Ms. Tapper] complained to me that she was feeling sexually harassed by [two Restaurant Depot managers] who [were] accusing her of having an affair with [various employees of Restaurant Depot]. She complained to me repeatedly and often in tears to [other Restaurant Depot employees]."); Reynolds Aff. at ¶¶ 24 ("The rules that applied toward [Ms. Tapper] were not applied to other cashiers. Clothing rules, relationships, smiling. They made her feel uncomfortable daily, accused her and degraded her."), 27 (noting that another Restaurant Depot employee had stated that a Restaurant Depot manager was trying to fire him because "she thinks me and [Ms. Tapper] have something going on")); (3) that Ms. Tapper was told to sign paperwork confirming she was dating another Restaurant Depot employee (*see* ECF No. 36-1, Ex. A, Deposition of Shirley Tapper ("Tapper Depo.") at 80 (averring that Restaurant Depot management asked her "to sign paperwork that show[ed] that [another Restaurant Depot employee and Ms. Tapper] [were] dating"); and (4) finally general accusations of sexual harassment (*see* Tapper Aff. at ¶¶ 13-14 ("I was sexually harassed daily and routinely harassed and humiliated by the managers, especially [two Restaurant Depot managers in particular]. I was constantly in tears after work because it was such a hostile and harassing work environment."); James Aff. at ¶ 8 ("[Ms. Tapper] was discriminated against and sexually harassed and her name was slandered."); Reynolds Aff. at ¶ 22 ("[Ms. Tapper] was targeted by [a Restaurant Depot manager] because [she was] intimidated by [Ms. Tapper's] African American beauty. She [was] treated very unfairly because of her beauty and her race.").

11

While the evidence supporting Ms. Tapper's claim hovers on the border of legal insufficiency, it is enough to generate a genuine dispute of material fact regarding whether she was subject to a hostile work environment. Ms. Tapper has presented evidence of pervasive sexual harassment, and stated in her affidavit that if left her "constantly in tears." (*See* Tapper Aff. at ¶ 13; *see also* Tapper Depo. at 73 ("And there's times when I walked out of there crying, because they would just bother me about anything, any little thing they could find.").) Concededly, Ms. Tapper does not allege that the conduct above prevented her from doing her job effectively or caused her to fear for her safety. But "[t]he fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious of cases." *Id.* The Second Circuit has noted that a hostile work environment exists "[w]henever the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse . . . ." *Torres v. Pisano*, 116 F.3d 625, 632 (2d Cir. 1997) at 631. Ms. Tapper has presented enough evidence to raise a genuine issue of material fact regarding whether the conduct above met this standard.

Restaurant Depot argues that "[o]ther courts have rejected sexual harassment claims based on conduct more severe than the conduct [of] which [Ms. Tapper] has complained." (ECF No. 34 at 10 (citing *Black v. Zaring Homes, Inc.*, 104 F.3d 822,823-24 (6th Cir. 1997) (conduct over a four-month period involving repeated sexual jokes; looking the plaintiff up and down and stating there's "Nothing I like more in the morning than sticky buns:" suggesting land area be named "Titsville" or "Twin Peaks"; stating "Just get the broad to sign it"; telling plaintiff she was "paid great money for a woman"; was found to be insufficient to support a claim); *Weiss v. Coca-Cola Bottling Co.*, 990 F.2d 333, 337 (7th Cir. 1993) (supervisor repeatedly asking about

plaintiff's personal life, telling her how beautiful she was, asking her on dates, calling her a dumb blonde, putting his hand on her shoulder at least six times, placing "I love you" signs in her work area, and attempting to kiss her once at a bar and twice at work; all deemed insufficient).) The Second Circuit has admonished district courts, however, that "the appalling conduct alleged in prior cases should not be taken to mark the boundary of what is actionable." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000) (quoting *Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 439 (2d Cir. 1999)). "[T]here is neither a threshold magic number of harassing incidents that gives rise, without more, to liability as a matter of law, nor a number of incidents below which a plaintiff fails as a matter of law to state a claim." *Id.* Here, Ms. Tapper has presented evidence that she was subjected to pervasive sexual harassment. This is enough to sustain her hostile work environment claim at this stage.

I therefore deny Restaurant Depot's motion for summary judgment with respect to Ms. Tapper's hostile work environment claim.

### C. Retaliation

Retaliation claims under Title VII are evaluated under the *McDonnell-Douglas* framework. *See Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802-05)). A plaintiff bringing such a claim must first "establish a prima facie case of retaliation by showing: (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (internal quotation marks and emphasis omitted).

13

Restaurant Depot makes two arguments against Ms. Tapper's retaliation claim. First, it contends that she cannot establish the fourth prong of a prima facie case because she "is unable to provide any specific date that she complained to [Restaurant Depot manager Tyronda James] let alone a date that was in 'close temporal proximity' to the date she was terminated." (ECF No. 34 at 12 (internal emphasis omitted).) Second, it argues that even if Ms. Tapper could establish a prima facie case, such a case would fail because "Restaurant Depot has shown that there was a legitimate, non-discriminatory reason to terminate [Ms. Tapper] following seven (7) disciplinary actions and that she cannot prove that termination [was] pretextual." (*Id.* at 12-13.) The latter argument fails given my conclusion noted above that there is a genuine dispute of material fact concerning the veracity of over half of those Disciplinary Actions. If, as Ms. Tapper suggests, her signature was forged on four out of seven Disciplinary Actions, it would provide substantial evidence that her termination was pretextual.

The argument concerning Ms. Tapper's inability to provide a date that she complained to James similarly does not move the needle for Restaurant Depot. "A plaintiff may establish a causal connection between [her] protected activity and [her] adverse employment action *either* through direct evidence of retaliatory animus or indirectly through evidence, for example, of the close proximity in time of the two events." *Dayes v. Pace Univ.*, 2 F. App'x 204, 208 (2d Cir. 2001) (emphasis added). Ms. Tapper has presented evidence of the former. In particular, Ms. James testified in her affidavit Ms. Tapper was "set up" and terminated due to her complaints to Ms. James and other Restaurant Depot managers regarding the sexual harassment she endured. (James Aff. at ¶ 7 ("[Ms. Tapper] was [retaliated] against for making complaint[s] to myself and other supervisors. [Ms. Tapper] was eventually set-up by saying [sic] her cash register till was short and written warnings and disciplinary documents were falsified and she was ultimately

14

fired."); ECF No. 33-3 at 2 (Disciplinary Action signed by Ms. Tapper with handwritten notation: "I was not present for this cash out. It was counted for me, my draw should not have been short."); Tapper Depo. at 62 ("Monica Franco routinely violated the reconciliation rule slash policy by opening and counting the proceeds [of cash registers] outside the presence of the plaintiff and other African American cashiers.") *see also* Tapper Depo. at 73 ("I complained [to her supervisor] that they were always coming to me about smiling too much . . . to them, that translated as flirting.").) Since there is a genuine issue of material fact concerning whether several of the Disciplinary Actions were legitimate, this evidence establishes a genuine dispute regarding whether Ms. Tapper was terminated in retaliation for her complaints to Restaurant Depot management.

I therefore deny summary judgment as to the retaliation claim.

## V. Conclusion

For the reasons set forth above, Restaurant Depot's motion for summary judgment (ECF No. 32) is denied. Contrary to the order entered on December 27, 2017 (ECF No. 31), the Joint Trial Memorandum is due October 25, 2018. Should the parties wish to proceed to mediation, they should file **within fourteen (14) days** the joint statement described at the undersigned's page of the Court's website. If the parties elect to proceed to mediation, the Court will postpone the deadline for filing the Joint Trial Memorandum until sixty (60) days after the completion or any unsuccessful mediation. Jury selection is scheduled for July 10, 2019 at 9:00 A.M.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut

September 10, 2018